IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DONALD LEE TAYLOR,**

    Petitioner,

v.                                                  Civil Action No. 1:15cv219
                                                        (Judge Keeley)

**PATRICK MIRANDY, Warden;**
**JIM RUBENSTEIN, Commissioner; and**
**BENITA MURPHY, W.Va. Parole Board, et al.,**

    Respondents.

## REPORT AND RECOMMENDATION

On November 23, 2015, the *pro se* Petitioner, Donald Lee Taylor ("Taylor"), an inmate in the custody of the West Virginia Division of Corrections, filed an Application for Habeas Corpus pursuant to 28 U.S.C. §2254. ECF No. 1. On December 18, 2015, Petitioner filed his § 2254 petition on the court-approved form, together with a memorandum of law and exhibits in support. ECF Nos. 7, 8. On December 22, 2015, Petitioner was granted leave to proceed *in forma pauperis*.

On December 22, 2015, the undersigned conducted a preliminary review of the file, determined that summary dismissal was not appropriate at that time, and directed the Respondents to show cause why the petition should not be granted. On January 19, 2016, the Respondents filed a response to the petition. ECF No. 17. On January 21, 2016, an order was entered notifying Petitioner of his right to file a reply. ECF No. 18. On February 1, 2016, Petitioner filed a Motion for Summary Judgment contending that the Respondents had failed to answer his petition. ECF No. 21. On February 9, 2016, Petitioner filed a reply to the Respondents' answer. ECF No. 22. On February 19, 2016, the Respondents filed a response to Petitioner's Motion for Summary Judgment. ECF No. 24. Finally, on February 29, 2016,

Petitioner filed a reply to the response. ECF No. 25. Accordingly, this matter is pending before me for an initial review and Report and Recommendation.

## I. Procedural History

On May 21, 1987, Petitioner pleaded guilty in Taylor County, West Virginia to Grand Larceny. On January 21, 1988, Petitioner was sentenced to the West Virginia Penitentiary for a period of "not less than one nor more than ten years." On or about November 18, 1988, Petitioner escaped from the Pruntytown Correctional Center. On or about April 26, 1989, Petitioner inflicted multiple lethal stab wounds on one Malcolm Davies. Petitioner was apprehended May 17, 1989.

On June 27, 1989, Petitioner was charged in a one-count complaint in Monongalia County with killing Malcolm Davies, in violation of West Virginia Code § 61-2-1. On December 7, 1989, Petitioner was convicted by a jury of Murder by First Degree with a recommendation of mercy. On February 22, 1990, the Court sentenced Petitioner to life with the recommendation of mercy. It further ordered that an additional five-year sentence for the violation of recidivist statutes be imposed. The Court ordered that Petitioner's sentence run consecutively to any sentence previously imposed on Petitioner. The Court also indicated Petitioner's "effective sentence date" was June 21, 1989.

On April 24, 2013, Petitioner was released on parole. ECF No. 8-1 at 2. Almost immediately, Petitioner had difficulty abiding with the terms of his parole. He was sanctioned with incarceration from August 23, 2013 to September 21, 2013, and from December 2, 2013, to February 3, 2014, for various parole violations.

Following his release from incarceration on February 3, 2014, his parole office continued him on electronic monitoring. ECF No. 8-3 at 3. On June 25, 2014, the West Virginia Division

of Corrections ("DOC") charged Petitioner with the following parole violations: (1) Petitioner returned home thirty-five minutes past curfew; (2) Petitioner used drugs (Methamphetamines); (3) Petitioner failed to keep his electronic monitoring transmitter strapped to his ankle; (4) Petitioner tampered with the electronic monitoring ankle bracelet; and (5) Petitioner failed to report to his parole officer as instructed on May 20, 2014. ECF No. 8-2 at 3. The West Virginia Parole Board ("Board") held a revocation hearing on July 9, 2014, at which Petitioner pleaded guilty to all violations. ECF No. 17-1. The Board revoked Petitioner's parole, remanded him to the DOC's custody and found that Petitioner would not be eligible for parole again until May of 2015. Id.

On January, 2014, Petitioner filed a petition for writ of habeas corpus in the Circuit Court of Kanawha County. On July 23, 2014, Petitioner filed an amended petition challenging his parole revocation and claimed the following:

1. After serving 24 years of a sentence of 10 years to life, he was released on parole in April 2013, with an actual release date of May 2013, whereby it was stipulated by the Parole Board that he would be required to serve 6 months on electronic monitoring. However, the Parole Office refused to release him from electronic monitoring and kept him on it in violation of the agreement until his parole was violated on technicalities relating to the electronic monitoring;

2. While free on parole, respondents Rubenstein and Fitzgerald, through parole service, had him unlawfully incarcerated on the alleged parole technicalities from August 12, 2013, through September 21, 2013, with no form of hearing ever being held and these so-called violations were dismissed;

3

3. While free on parole and while on the electronic monitoring device, parole services failed to "distance regulate" the device at his residence and then unlawfully placed him in jail on alleged curfew violations, which for the most part were due to the electronic monitoring devices' malfunctions and not being properly distance regulated;

4. When released from jail in February 2014, parole services had Petitioner unlawfully placed back on the electronic monitoring device in violation of the contract and kept him on it until he received a technical parole violation in May 2014, which again related to the electronic monitoring device and which was ultimately used to revoke his parole in July 2014;

5. From May 21 through May 22, 2014, Respondents Napier, Rubenstein and Fitzgerald submitted false information that he had absconded in order to obtain a warrant for his arrest. This false information was used before the Parole Board to have his parole revoked;

6. Respondents Keifer and PrimeCare Medical are being deliberately indifferent to his serious medical needs regarding stage four fibrosis of his liver and need for immediate treatment by stating that he cannot receive his needed treatment while incarcerated;

7. Respondents Napier, Fitzgerald[1] and Rubenstein provided false information to the Parole Board that he had already received two sanction "shock incarceration sentences" when he in fact had only received one, which false information was done to force him into a parole revocation hearing instead of a 120 day shock sanction hearing;

8. On July 9, 2014, the Parole Board used the breach of contract and other false information to revoke his parole when it was not in his or her society's best interests to do so as he had not committed any crimes or violated any laws while on parole.

---

[1] Although not named in in the caption of his original pleading, it would appear that Napier and Fitzgerald are parole officers. ECF No. 7-2 at 6.

9. All of the named Respondents maintain unconstitutional policies, customs and practices. The schemes in parole related matters and medical care issues, as applicable, have posed a threat of a death sentence on him and wanton infliction of unnecessary pain and suffering at threat of harm to his health and safety by their conduct.

ECF No. 7-1 at 6-8.

On January 16, 2015, the Circuit Court of Kanawha County entered an order denying the petition and dismissing it from the docket. The order noted that the court had reviewed the petition and found no contentions of fact or law were asserted to support his grounds for post-conviction relief. Furthermore, the court found that it had no jurisdiction over the claims asserted, which rest with the West Virginia Parole Board. ECF No. 7-3.

Petitioner appealed the January 15, 2015, order of the circuit court denying his petition for a writ of habeas corpus. On November 16, 2015, the WVSCA affirmed the circuit court's order denying Petitioner's petition for a writ of habeas corpus. ECF No. 7-8. In its Memorandum Decision, the WVSCA reviewed the decision of the Parole Board for an abuse of discretion. The WVSCA determined that the Parole Board's finding that Petitioner absconded was supported by his guilty pleas to violations of failing to keep his electronic monitoring transmitter strapped to his ankle, tampering with the electronic monitoring ankle bracelet and failing to report to his parole officer on May 20, 2014. Therefore, the WVSCA concluded that the Parole Board did not abuse its discretion in revoking Petitioner's parole and remanding him into DOC custody.

## II. Federal Petition for Habeas Corpus

**Claims by Petition**

In his pending petition, Petitioner raises the following grounds for relief:

1. Between May 2014 and July 2014, his liberty interest in parole was revoked based upon an alleged technical violation relating to an electronic monitoring device, the required use of which had already expired;

2. Between May 2014 and July 2014, his liberty interest in parole was arbitrarily revoked without due process and equal protection of law when he was denied any meaningful notice prior to or during his revocation hearing that he was being considered an absconder, and there was no evidence that he was an absconder;

3. The State of West Virginia unreasonably, capriciously, arbitrarily and collectively deprived him of his liberty interest in parole without due process or equal protection by failing to comport with fundamental fairness, refusing to obey legislation or appropriately consider the facts of his case.

4. He is being denied adequate medical care/treatment in relation to his serious illness of Hepatitis C liver disease, subjecting him to extensive pain and suffering and a serious risk of harm to his health and safety.

For relief, Petitioner asks that his parole revocation be reversed. In addition, Petitioner asks that the court's decision "reflect that [his] rights have been violated, that [he] be credited the time he served on parole and that all time [he] has served back in custody be credited as (2 for 1) towards [his] remaining time to be served on parole and or enter an order for [his] discharge from state custody." ECF No. 7 at 20.

**<u>Respondents' Answer</u>**

In their answer, Respondents contend that Petitioner is not entitled to a writ of habeas corpus under 28 U.S.C. § 2254(d)(1) because his claim was adjudicated on the merits by the WVSCA, and he has failed to prove that this decision was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. In addition, Respondent contends that Petitioner does not qualify for a writ of habeas corpus under 28 U.S.C. § 2254(d)(2) because his claim was adjudicated on the merits by the WVCSA, and he has failed to prove that this decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**Petitioner's Reply to Respondent's Response**

In his Reply, Petitioner attempts to refute the arguments made by Respondent by citing case law. In addition, Petitioner argues strenuously that he was not afforded proper notice that he was being labeled an absconder by the Parole Board, and therefore, was denied due process.

### III. Standard of Review

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by the habeas statue. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362

(2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 405. A state court decision "involves an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Id. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. Id. at 411.

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

Harrington v. Richter, 131 S.Ct. 770, 786–87 (2011). A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard.

Finally, determinations of factual issues by the state court are presumed to be correct, and Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This standard "reflects Congress's view that there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." Id. Accordingly, courts should not "casually cast aside a state court's factual findings. Id.

### IV. Analysis

In support of his claim that his parole was improperly revoked, Petitioner argues repeatedly that the revocation was based on "technical" violations, and that he violated no laws. He also argues that his parole revocation is not in either his or society's best interest. However, he fails to explain how the WVSCA acted in a manner "contrary to" the decision of the United States Supreme Court and merely restates the same complaints that he adjudicated in his state habeas petition and appeal therefrom. Although Petitioner uses the catch words "due process," "Eighth Amendment" and "Fourteenth Amendment," he does not explain how they are related to his case. Moreover, to the extent that Petitioner is asking this Court to substitute its own factual determinations for that of the state courts, the same is clearly not appropriate.

The Court appreciates that Petitioner served twenty-four years of incarceration before being released on parole. The Court also recognizes that Petitioner' parole was revoked

approximately one year later, and it would appear that his next parole eligibility date is not until May 1, 2017. However, the mere fact that Petitioner served an extended portion of his life with mercy sentence and must serve additional time before he is again parole eligible, is not a factor that makes his revocation unlawful.

In West Virginia, parole is a statutory creation, and the legislature has granted the parole board a great deal of discretion in making its decisions. Of particular relevance to this case is W.Va. Code § 62-12-19, which provides in relevant part as follows:

a. If at any time during the period of parole there is reasonable cause to believe that the parolee has violated any of the conditions of his or her release on parole, the parole officer may arrest him or her with or without an order or warrant, or the Commissioner of Corrections may issue a written order or warrant for his or her arrest, which written order or warrant is sufficient for his or her arrest by any officer charged with the duty of executing and ordinary criminal process. . . .

b. When a parolee is under arrest for violation of the conditions of his or her parole, he or she shall be given a prompt and summary hearing before a panel of the board . . .
If at the hearing it appears to the satisfaction of the panel that the parolee has violated any condition of his or her release on parole, or any rules or conditions of his or her supervision, the panel may revoke his or her parole and may require him or her to serve in prison the remainder or any portion of his or her maximum sentence for which, at the time of his or her release, he or she was subject to imprisonment: Provided, that if the violation of the conditions of parole or rules for his or her supervision is not a felony as set out in section 18 [§ 62-12-18] of this article, the panel **may, if in its judgment the best interests of justice do not require revocation, and reinstate him or her on parole.**
(Emphasis added).

Accordingly, while revocation of parole is mandated when a parolee has violated the conditions of his or her release on parole by confession to, or being convicted of any of the crimes set forth in § 62-12-18[2], it is clear that the Board is granted wide discretion to revoke parole for a parolee, like Petitioner, who has violated the conditions of his release or any rules or conditions of his release. Here, although Petitioner was initially subject to electronic monitoring for six-months, [ECF No. 8-1 at 3], he was continued on electronic monitoring upon his release

---

[2] See W.Va. Code § 62-12-19(c).

10

from "shock incarceration" on February 3, 2014. ECF No. 8-3 at 3. Furthermore, at the parole revocation hearing, Petitioner pleaded guilty to multiple counts of violating the terms of his electronic monitoring, by: (1) returning home 35 minutes past his curfew; (2) failing to keep the transmitter strapped to his ankle at all time; and (3) tampering with the ankle bracelet. ECF No. 17-1 at 2. In addition, Petitioner pleaded guilty to using methamphetamines and failing to report as instructed on May 20, 2014. Id. Therefore, there was ample evidence from which the board could exercise its discretion to revoke his parole.

In addition to his allegations regarding revocation of parole, Petitioner has also raised allegations that he being denied adequate medical care/treatment in relation to his diagnosis of Hepatitis C which has subjected him to extreme pain and suffering and a serious risk of harm to his health and safety in violation of the Eighth Amendment. "It is well settled that challenges to the fact or length of confinement are properly considered in the context of habeas corpus." Plyler v. Moore, 129 F.3d 728, 733 (4th Cir. 1997) (citing Preiser v. Rodriguez, 411 U.S. 475, 487-488, (1973)). A civil rights action is the proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life. Preiser, 411 U.S. at 499.

To the extent that Petitioner is attempting to allege that prison officials are being deliberately indifferent to a serious medical condition, Petitioner is challenging the conditions of his confinement, not the fact or duration. To pursue his claim regarding alleged inadequate medical care, Petitioner must file a civil rights action pursuant to 42 U.S. C. § 1983.

Finally, the Court notes that Petitioner has filed a Motion for Summary Judgment. ECF No. 21. When he initially filed the motion, he claimed entitlement because Respondents allegedly had not filed their answer within twenty-eight (28) days of the Order to Show Cause, or by January 19, 2016.

To the extent that Petitioner was seeking default judgment, he is not entitled to the same. First, the Courts have long established that "entry of default judgment in a habeas case is extremely disfavored." Faust v. Anderson, 52 F.Supp.2d 930 (N.D. Ind. 1999), citing Bleitner v. Welborn, 15 F.3d 652 (7th Cir. 1994). The Courts also have stated that "[default judgment] should be preserved as sanction against custodian's unwarranted delay" only when there have been "long and inadequately explained delays [in responding]." Furthermore, "where harm to petitioner is apparently so slight and other adequate remedies are available, granting writ of habeas corpus by default judgment amounts to abuse of discretion." Ruiz v. Cady, 660 F.2d 337 (7th Cir. 1981).

In the instant case, Petitioner was incarcerated at St. Marys Correctional Center ("SMCC") when he initiated this action. Although he provided the Court with a change of address on December 4, 2015 [ECF No. 4], Respondents apparently relied on the attestation on the initial § 2244 Motion to ascertain his address. ECF No. 24-2. Respondents filed a timely answer on January 19, 2016, and mailed a copy to Petitioner at SMCC on that same date. ECF No. 24-1. When Respondents were made aware of Petitioner's transfer to the Northern Correctional Facility, they mailed another copy of their answer to Petitioner at that facility. ECF No. 24-3. In addition, the Clerk of Court sent Petitioner a copy on January 29, 2016, at his request. ECF No. 20. Accordingly, there is no evidence of "long and inadequately explained delays" in responding to the Court's Order to Show Cause, and therefore, it would be inappropriate to grant Petitioner default judgment. Moreover, to the extent that Petitioner was truly seeking summary judgment, the discussion provided in this Report and Recommendation establishes that he is not entitled to the same.

## V. Recommendation

Based on the foregoing, the undersigned recommends that Petitioner's Motion for Summary Judgment [ECF No. 21] be **DENIED**, and his §2254 petition be **DENIED and DISMISSED with prejudice** with respect to his claims regarding parole revocation and be **DISMISSED WITHOUT PREJUDICE** to his right to file a § 1983 action with respect to his claims regarding medical treatment.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: July 15, 2016

*/s Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE