IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DONALD LEE TAYLOR,

       Petitioner,

v.                            CIVIL ACTION NO. 1:15CV219
                                 (Judge Keeley)

PATRICK MIRANDY, Warden, St. Mary's
Correctional Center, JIM RUBENSTEIN,
Commissioner, W. Va. Division of
Corrections, BENITA MURPHY, W. Va.
Parole Board, et al.,

       Respondents.


MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

Pending before the Court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Dkt. No. 7) filed by the petitioner, Donald Lee Taylor ("Taylor"). Also pending is the Report and Recommendation ("R&R") of the Honorable Michael J. Aloi, United States Magistrate Judge, recommending that the Court deny Taylor's motion for summary judgment and dismiss his § 2254 petition (Dkt. No. 27). For the reasons that follow, the Court **ADOPTS** the R&R. Thus, it **DENIES** the petitioner's motion for summary judgment and **ORDERS** that the § 2254 petition be **DISMISSED WITH PREJUDICE** with respect to claims regarding parole revocation and **DISMISSED WITHOUT PREJUDICE** with respect to claims regarding medical treatment.

## MEMORANDUM OPINION AND ORDER ADOPTING
## THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
## PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

### BACKGROUND

On December 7, 1989, a Monongalia County jury convicted Taylor of first degree murder in the stabbing death of Malcolm Davies. Taylor committed this crime while on escape from the Pruntytown Correctional Center, where he was serving a sentence for grand larceny. On April 24, 2013, the West Virginia State Parole Board ("Parole Board") authorized Taylor's release on parole but imposed a special condition of electronic monitoring ("EM") for six months (Dkt. No. 8-1 at 2-3). This EM condition was continued upon his release from "shock incarceration" on February 3, 2014 (Dkt. No. 8-3 at 3).

On June 25, 2014, the Parole Board gave Taylor notice that it would hold a hearing to determine whether his parole should be revoked based on the following violations: 1) returning home 35 minutes past curfew, 2) using methamphetamines, 3) failing to keep the EM transmitter strapped to his ankle, 4) tampering with his EM ankle bracelet, and 5) failing to report as instructed (Dkt. No. 8-1 at 3). He pleaded guilty to each of these violations, and the Parole Board revoked his parole on July 9, 2014 (Dkt. No. 17-1 at 2).

## MEMORANDUM OPINION AND ORDER ADOPTING
### THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

Taylor filed a petition for writ of habeas corpus in the Circuit Court of Kanawha County, West Virginia, on July 22, 2014 (Dkt. No. 7-8 at 3). The petition alleged that Taylor's parole had been unlawfully revoked and that he was receiving inadequate medical treatment. Id. The Circuit Court denied the petition, following which Taylor appealed to the Supreme Court of Appeals of West Virginia ("Supreme Court"). Id. The Supreme Court decided the case on its merits and affirmed the Circuit Court's order. Id. at 4. In doing so, it reviewed the Parole Board's decision under an abuse of discretion standard and found sufficient evidence to support Taylor's parole revocation as an absconder because he had pleaded guilty to the alleged violations. Id. at 3-4. In addition, the Supreme Court found that the Department of Corrections was providing Taylor with adequate care, albeit not "the most sophisticated care that money can buy." Id. at 4.

On November 23, 2015, Taylor filed a § 2254 petition for writ of habeas corpus in this Court (Dkt. No. 1). Thereafter, on December 18, 2015, Taylor refiled his petition on the court-approved form and stated four grounds for relief (Dkt. No. 7). He also attached a number of exhibits to the petition and filed a separate memorandum of law (Dkt. No. 8).

**MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

Taylor first claims that his parole was improperly revoked for a mere "technical violation" and that this revocation deprived him of "due process and equal protection of law" (Dkt. No. 7 at 6). Second, he claims that his Fourteenth Amendment rights were violated when his "liberty interest in parole was arbitrarily revoked" without meaningful notice to him that he was being labeled as an absconder. Id. at 9. Taylor's third claim alleges that the respondents acted in contravention of the Fourteenth Amendment "by failing to comport with fundamental fairness, refusing to obey legislation or appropriately consider the 'facts' of the case." Id. at 11. His fourth claim alleges a lack of adequate medical care regarding Taylor's liver disease, purportedly in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment. Id. at 13.

In their January 19, 2016, response, the respondents contend that Taylor is not entitled to a writ of habeas corpus because the circumstances of his case do not comply with § 2254(d) (Dkt. No. 17). On February 1, 2016, Taylor filed a motion in which he requested a default judgment because the respondents did not file a response to the petition within 28 days; in the alternative, he argued that summary judgment in his favor was appropriate (Dkt. No.

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

21). The respondents noted in their response that "default judgment in a habeas case is extremely disfavored" and that there had not been "long and inadequately explained delays" to justify it (Dkt. No. 24 at 1-2). They contended that Taylor had not shown his entitlement to summary judgment in light of his "naked assertion that no genuine factual dispute exists" and "unsupported statement that he is entitled to judgment as a matter of law." Id. at 3. In reply, Taylor reiterated that his rights had been violated (Dkt. No. 25).

On July 15, 2016, Magistrate Judge Aloi filed his R&R (Dkt. No. 27), in which he concluded that, despite Taylor's vigorous arguments that his parole should not have been revoked, he had failed to explain how the decision of the Supreme Court was "contrary to" federal law. It also rejected as inappropriate Taylor's suggestions that this Court should make its own factual findings. Id. at 9. Although Taylor had argued that his due process, Eighth Amendment, and Fourteenth Amendment rights had been violated, the R&R pointed out that West Virginia law allows for the continuation of his EM, and clearly allows the Parole Board to revoke his parole under the facts as found by the state court. Id. at 9-11.

MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

In addition, the R&R concluded that Taylor's claims regarding his medical treatment did not fall under the "fact or length of confinement" as contemplated by the habeas corpus statutes, and would be appropriately filed as a civil rights action. Id. at 11. Finally, the R&R concluded that a default judgment was not appropriate where the respondents had not engaged in "long and unexplained delays." Id. at 11-12. Although the respondents' filings were timely, Taylor had not received them immediately due to a mailing mistake. Id. at 12. Consequently, Magistrate Judge Aloi recommended that the Court deny Taylor's motion for summary judgment, dismiss with prejudice his § 2254 claims regarding parole revocation, and dismiss without prejudice his § 2254 claim regarding medical treatment. Id. at 13.

On August 2, 2016, the Court granted Taylor's motion for an extension of time in which to file objections in light of the fact that he was housed in a segregation unit without access to legal documents (Dkt. No. 30 at 1). In addition, the Court stayed the case and instructed Taylor to file objections within two weeks of his release from the segregation unit. Id. The Court received Taylor's objections to the R&R on August 5, 2016 (Dkt. No. 31), at which time it lifted the stay (Dkt. No. 32).

**MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

## STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207 (4th Cir. 2014). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

## B. Magistrate Judge's R&R

When reviewing a magistrate judge's report and recommendation made pursuant to 28 U.S.C. § 636, the court must review de novo only the portion to which an objection is timely made. 28 U.S.C. § 636(b)(1)(C). On the other hand, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." Dellacirprete v. Gutierrez, 479 F. Supp. 2d 600, 603–04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold those portions of a recommendation as to which no objection has been made unless they are "clearly erroneous." See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

## C. Pro Se Pleadings

Lastly, the Court must liberally construe pro se pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A pro se complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which the plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999).

## MEMORANDUM OPINION AND ORDER ADOPTING
## THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
## PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### LEGAL STANDARD

Title 28 U.S.C. § 2254 permits a state prisoner to file an application for a writ of habeas corpus to challenge his conviction "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Issuance of the writ is appropriate where the court finds "errors that undermine confidence in the fundamental fairness of the state adjudication." Williams v. Taylor, 529 U.S. 362, 375 (2000) (referencing ineffective assistance of counsel). District courts may only entertain such a writ if the applicant has exhausted all available state remedies. 28 U.S.C. § 2254(b)(1)(A); Cullen v. Pinholster, 563 U.S. 170, 182 (2011) ("'[T]he broader context of the statute as a whole' . . . demonstrates Congress' intent to channel prisoners' claims first to the state courts."). Prisoners have not exhausted their state remedies if they have "the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "To satisfy the exhaustion requirement, a habeas petitioner must fairly

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

present his claim to the state's highest court." <u>Matthews v. Evatt</u>, 105 F.3d 907, 911 (4th Cir. 1997). It is the prisoner's burden to demonstrate that he has exhausted his state judicial remedies. <u>Beard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998). Courts are not precluded from denying an application "on the merits, notwithstanding the failure . . . to exhaust." 28 U.S.C. § 2254(b)(2).

A court may not grant a writ under § 2254 regarding a claim "adjudicated on the merits in State court" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

<u>Id.</u> § 2254(d). A "state-court decision is contrary to" the Supreme Court's "precedent if the state court arrives at a conclusion opposite to that reached" by the Supreme Court "on a matter of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." <u>Williams</u>, 529 U.S. at 405. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 563 U.S. at 181.

**MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

A state court decision "involves an unreasonable application" of such law if it "identifies the correct governing legal principle . . . but unreasonably applies" it to the facts at issue. Williams, 529 U.S. at 412. Importantly, "unreasonable application" requires that the Court do more than "conclude[] in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Therefore, § 2254 acts to guard only against "extreme malfunctions," such as "cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Harrington v. Richter, 562 U.S. 86, 102 (2011).

Factual determinations by the state court are presumed correct, unless the petitioner can prove otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "There is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals," and doing so lightly would "intrude[] on the state's interest in administering its criminal law." Sharpe v. Bell, 593 F.3d 372, 379 (4th Cir. 2010). This Court will not "casually cast aside" factual findings of the state court. See id.

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

## ANALYSIS

**A. Exhaustion**

The parties have not disputed that Taylor properly exhausted his claims at the state level, 28 U.S.C. § 2254(b), and the Court concludes that in fact he has done so. Taylor claims that he raised all issues presented here in his state habeas petition and his appeal from the denial of that motion (Dkt. No. 7).[1] After reviewing the state court filings, the Court agrees. In his state habeas petition, Taylor voiced his disagreement with the decisions of the Parole Board, but he also specifically alleged that his "substantial liberty interest" in parole, protected by the Fourteenth Amendment, was arbitrarily and capriciously revoked without "fair proceeding, notice and opportunity to be heard and have ones [sic] case decided upon . . . the merits" (Dkt. No. 7-1 at 10). In addition, he alleged that the respondents maintained unconstitutional policies and had subjected him to "cruel and unusual punishment" by denying needed medical care. Id. That these arguments have been presented to the highest court in the state of

---

[1] Taylor's petition also states that he raised these issues on direct appeal from his conviction, but because these claims arose post-conviction, that is neither necessary nor possible.

MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

West Virginia satisfies the exhaustion requirement. See <u>Matthews</u>, 105 F.3d at 911.

### B. Denial of Default Judgment

Taylor did not object to the R&R's conclusion that he was not entitled to default judgment simply because the respondents mailed his copy of their timely filed answer to the incorrect mailing address (Dkt. No. 27 at 12). Therefore, the Court need only conduct a clear error review of this determination. <u>Diamond</u>, 416 F.3d at 315. Finding no clear error, the Court adopts the Magistrate Judge's reasoning and conclusion in this regard.

### C. The Eighth Amendment: Claim Four

Taylor likewise did not object to the R&R's conclusion that his fourth claim, regarding the adequacy of medical treatment under the Eighth Amendment, is not appropriate for a § 2254 petition because it does not challenge the fact or length of his confinement (Dkt. No. 27 at 11). Unfortunately for Taylor, the alleged inadequacy of medical treatment does not operate to make his "entire custody and confinement . . . unconstitutional" (Dkt. No. 8 at 5). Finding no clear error in the R&R's conclusion that a claim brought under § 1983 is the appropriate avenue by which to

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

challenge the conditions of one's confinement, the Court adopts the R&R's conclusion as to that claim.

**D. Due Process: Claims One, Two, and Three**

Taylor does object to the R&R's conclusions regarding his other claims, and the Court has conducted a de novo review of those conclusions. The R&R notes that Taylor uses constitutional "catch words" but fails to explain how they relate to his case or how the state court reached a decision "contrary to" federal law (Dkt. No. 27 at 9). The Court agrees that Taylor provides legal citations with no explanation as to their applicability, but he has proceeded pro se for the entirety of his state and federal habeas proceedings, and his pleadings should be liberally construed to reflect that fact. Estelle, 429 U.S. at 106. Although the Court will not construct Taylor's legal arguments for him, it will address those claims that he has appropriately presented, however inartfully.

In that regard, Taylor claims that he was deprived of his liberty interest in parole without due process under the Fourteenth Amendment because there was no hearing before his period of EM was extended, and he did not receive "meaningful notice" that he was

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

being considered an absconder (Dkt. No. 8 at 3-4).[2] In addition, in his third claim, he seems to assert that the Parole Board arbitrarily and capriciously revoked his parole for no valid reason. Id. at 4. After careful review, the Court concludes that Taylor has not met the requirements of § 2254(d).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Therefore, when an individual is deprived of his or her liberty, the state must provide adequate procedures. Id. The Supreme Court of the United States has held that parolees have a "conditional liberty" interest in continuing on parole because its revocation results in a "grievous loss" of the "enduring attachments of normal life." Morrissey v. Brewer, 408 U.S. 471, 480, 482 (1972). On the other hand, "[t]he State . . . has an 'overwhelming interest' in ensuring that a parolee complies with . . . requirements and is returned to prison if he fails to do so." Pa. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 365 (1998) (holding that evidence obtained in violation of the Fourth Amendment may be used in parole revocation proceedings).

---

[2] Taylor often appends the phrase "equal protection" to his allegations, but he does not articulate any argument that his right to equal protection has been violated.

**MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

After a parolee is arrested, "due process requires that . . . the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." <u>Morrissey</u>, 408 U.S. at 487. The parolee should be provided notice of the preliminary hearing, as well as its purpose. <u>Id.</u> at 486-87. The parolee should also be given the opportunity for a hearing before a final decision by the parole authority. <u>Id.</u> at 487-88. "[T]he minimum requirements of due process" at this hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

<u>Id.</u> at 488.

"Most States . . . have adopted informal, administrative parole revocation proceedings" that comply with these requirements. <u>Scott</u>, 524 U.S. at 365-66. West Virginia is no different. The Parole Board is created by statute and exists in part to "conduct[]

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

hearings and mak[e] determinations regarding the revocation of parole." W. Va. Code § 62-12-12a.

A parolee may be arrested at any time if "there is reasonable cause to believe that the parolee has violated any of the conditions of his or her release on parole." Id. § 62-12-19(a).[3] A parolee who has been taken into custody for violating his conditions "shall be given a prompt and summary hearing before a Parole Board panel upon his or her written request, at which the parolee . . . shall be given an opportunity to attend." Id. § 62-12-19(a)(2).

> If at the hearing it is determined that reasonable cause exists to believe that the parolee has: (i) Absconded supervision; (ii) Committed new criminal conduct other than a minor traffic violation or simple possession of a controlled substance; or (iii) Violated a special condition of parole design [sic] to protect either the public or a victim; the panel may revoke his or her parole and may require him or her to serve in a state correctional institution the remainder or any portion of his or her maximum sentence for which, at the time of his or her release, he or she was subject to imprisonment.

Id. § 62-12-19(a)(2)(A).

---

[3] The R&R discusses this code section, but it quoted a prior version. Although the prior version was in effect when Taylor's release was authorized, an amended version went into effect on July 12, 2013, before the violations, extended EM, and revocation proceedings at issue. Therefore, the Court will quote the pertinent language from the current provision.

## MEMORANDUM OPINION AND ORDER ADOPTING
## THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
## PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

If the parolee's violation does not fall within the above three circumstances, and the violation is not a specified felony, the Parole Board is given the option to reinstate the parolee "if in its judgment the best interests of justice do not require a period of confinement." Id. § 62-12-19(a)(2)(B). On the other hand, reinstatement on parole does not appear to be required in any circumstance where the Parole Board finds that a violation has occurred.

Here, On April 24, 2013, the Parole Board authorized Taylor's release on parole but imposed a special condition of electronic monitoring ("EM") for six months (Dkt. No. 8-1 at 2-3). This EM condition was continued upon his release from "shock incarceration" on February 3, 2014 (Dkt. No. 8-3 at 3). On June 25, 2014, the Parole Board sent Taylor a "notice that a parole revocation hearing [would] be held" to determine whether his parole should be revoked based on the following violations: 1) returning home 35 minutes past curfew, 2) using methamphetamines, 3) failing to keep the EM transmitter strapped to his ankle, 4) tampering with his EM ankle bracelet, and 5) failing to report as instructed (Dkt. No. 8-1 at 3). He pleaded guilty to each of these violations, and the Parole Board revoked his parole on July 9, 2014 (Dkt. No. 17-1 at 2).

**MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

Taylor unsuccessfully presented his arguments to the Circuit Court and the Supreme Court. Because he challenged the lawfulness of his parole revocation, the Supreme Court conducted a de novo review of the Parole Board's decision under an abuse of discretion standard (Dkt. No. 7-8 at 3). It concluded that Taylor's guilty pleas supported the Parole Board's finding that he had absconded supervision, and held that the Parole Board had not abused its discretion by revoking Taylor's parole. Id. at 3-4.

Although the Supreme Court did not specifically address Taylor's claims that he had been deprived of due process, it did conclude as a general matter that "[r]evocation of petitioner's parole was lawful." Id. at 3. This Court infers from that finding that the Supreme Court did not find that any due process violations had occurred; however, without any discussion of federal law having been undertaken, this Court must review the Supreme Court's decision to determine whether it was "contrary to . . . clearly established Federal law" as contemplated by 28 U.S.C. § 2254(d)(1). For the reasons that follow, the Court concludes that it was not.

1. Claim One

Taylor first claims that his parole was revoked in violation of his due process rights for the "technical violations" of his EM

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

agreement because the respondents "failed to provide Petitioner with a modification hearing or reasonable justification . . . before extending Petitioner's electronic monitoring," rendering the second EM period invalid (Dkt. No. 7 at 6; Dkt. No. 8 at 3). He argues that West Virginia law precludes parole revocation on the basis of the EM violations because he complied with the EM condition that was initially imposed (Dkt. No. 8 at 3). West Virginia law, however, states that "the Division of Corrections may impose, subject to modification at any time, any other conditions which the division considers advisable." W. Va. Code § 62-12-17(d). Parole Services had the discretion to continue Taylor on EM, as it did when he was released from "shock incarceration" (Dkt. No. 8-3 at 3).

Taylor has not provided any valid authority to support the proposition that due process required a hearing before this modification occurred.[4] Despite the fact that Taylor does not think

_____

[4] Taylor asserts that the conditions of his parole could not be modified without a hearing (Dkt. No. 8 at 3). In support, he cites West Virginia case law that mandates the presence of the accused when conditions of probation are modified. Syl. Pt. 2, Louk v. Haynes, 223 S.E.2d 780 (W. Va. 1976). This rule does not apply to Taylor's case, however, as it is the conditions of his parole that are at issue. Likewise, Taylor urges that Commissioner Jim Rubenstein attempted to have his parole reinstated, constituting "confessed error" and "reversible error" by the state (Dkt. No. 8

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

he should have been continued on EM, or, alternatively, was entitled to a hearing in that regard, the "technical violations" that he committed while on the continued EM are adequate grounds for revocation under West Virginia law. See W. Va. Code § 62-12-19(a)(2)(B). West Virginia's Supreme Court did not "arrive[] at a conclusion opposite to that reached" by the Supreme Court of the United States "on a matter of law" or "confront[] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[] at a result opposite" to it. Williams, 529 U.S. at 405. Rather, West Virginia's Supreme Court determined that Taylor's revocation was lawful under West Virginia law, which complies with the requirements of due process articulated by the Supreme Court. Morrissey, 408 U.S. at 488.

2. Claims Two and Three

Taylor's second claim asserts that he was deprived of his liberty interest in parole without due process because he was not given "meaningful notice" that the Parole Board considered him to be an "absconder" based upon his violations (Dkt. No. 7 at 9; Dkt.

---

at 2-3). The cited precedent relates to situations in which "the state confesses error and urges that the petitioner be granted relief from the erroneous action of a trial court." Louk, 223 S.E.2d at Syl. Pt. 11. The present case does not involve those circumstances.

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

No. 8 at 4). On a related issue, his third claim alleges that the Parole Board acted in an arbitrary and capricious manner "by failing to comport with fundamental fairness, refusing to obey legislation, or appropriately consider the 'facts' of the case" (Dkt. No. 7 at 11; Dkt. No. 8 at 4).[5]

The Parole Board provided Taylor with adequate procedural safeguards. Neither Taylor's argument nor the record establishes that the Parole Board's proceedings were deficient under Morrissey. See Morrissey, 408 U.S. at 488. Taylor received a notice that the Parole Board intended to hold a hearing to determine whether his parole should be revoked (Dkt. No. 8-2 at 3). In addition, it informed Taylor of the violations with which he was charged. Id. The Parole Board then held a hearing and afforded him the

---

[5] In his motion for summary judgment on this claim (Dkt. No. 21), Taylor argues that he pleaded guilty to the violations "under duress" because he was never given notice that the Parole Board was holding a revocation hearing. Id. at 4. Taylor claims that the notice he received only stated that "[t]he Board has decided to hold a sanction hearing on those charges," but the paragraph immediately below that statement reads as follows: "Please take notice that a parole revocation hearing will be held for you . . . . The purpose of this hearing is to determine whether the Order of Release on Parole . . . shall be revoked" (Dkt. No. 8-2 at 3). This, of course, is more than adequate notice that a revocation hearing was to take place.

opportunity to attend. Rather than contest the charges against him, he chose to plead guilty to them (Dkt. No. 17-1 at 2).

Taylor cites no valid authority in support of the proposition that due process required that he receive "meaningful notice," or any notice at all, of the Parole Board's consideration that he was an absconder (Dkt. No. 8 at 4). Rather, it seems that he disagrees with the Parole Board's determination that he had "absconded supervision" because he does not believe that his conduct fits within the Black's Law Dictionary definition of "abscond," or alternatively, that there are mitigating factors that the Parole Board and the courts should have considered. <u>Id.</u>[6]

Such decisions are committed to the discretion of the Parole Board under West Virginia law, and the Supreme Court held that the Parole Board did not abuse that discretion (Dkt. No. 7-8 at 3-4). In a similar vein, this Court finds that when Taylor pleaded guilty to the parole violations after receiving the notice required by the

---

[6] In addition, Taylor appears to be laboring under the misconception that his parole cannot be revoked lawfully unless a term of W. Va. Code § 62-12-19(a)(2)(A) is present (Dkt. No. 8 at 4-5). Rather, it appears that the Parole Board has broad discretion to revoke parole when any violation takes place, which it may readily have done here, even in the absence of a determination that Taylor had absconded supervision. <u>See</u> W. Va. Code § 62-12-19(a)(2)(B).

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

Constitution he provided the Parole Board with an adequate basis to label him as an absconder, thereby allowing his parole to be revoked. Id.; W. Va. Code § 62-12-19(a)(2)(A). The procedure provided by the Parole Board did not run afoul of Morrissey's requirements, and it properly revoked Taylor's conditional liberty interest in his parole. Therefore, the Supreme Court did not made a decision "contrary to" federal law.

## CONCLUSION

Taylor has not presented any compelling arguments that the decision of the Supreme Court of Appeals of West Virginia was contrary to or involved an unreasonable application of federal law in a manner that would warrant this Court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons discussed, the Court **ADOPTS** the R&R, **DENIES** the petitioner's motion for summary judgment, and **DENIES** the petitioner's § 2254 petition. The Court **ORDERS** that the petition be **DISMISSED WITH PREJUDICE** with respect to Taylor's claims regarding parole revocation and **DISMISSED WITHOUT PREJUDICE** with respect to his claims regarding medical treatment.

It is so **ORDERED**.

**MEMORANDUM OPINION AND ORDER ADOPTING
THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such cases. If the court denies the certificate, "the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255(a).

The Court finds it inappropriate to issue a certificate of appealability in this matter because Taylor has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). Upon review of the record, the Court concludes that Taylor has failed to make the requisite showing, and **DENIES** a certificate of appealability. The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and the pro se petitioner, certified mail, return receipt

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 27] AND DENYING**
**PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

requested, to enter a separate judgment order, and to remove this

case from the Court's active docket.

DATED: September 23, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE